FRANCIS W. CARRUTH *vs.* BENJAMIN F. BAYLEY.

It is within the discretion of the judge who presides at a trial to allow the plaintiff to read to the jury a document in support of his claim, which is proved after the close of the plaintiff's direct evidence, by cross-examination of the attesting witness, who is called for other purposes by the defendant.

Upon the issue whether A., who had purchased the interest of his insolvent partner B. in the partnership property, had reason to believe B. insolvent, a witness testified that he was a creditor of B. to a large amount, and in an interview with A. shortly before his purchase, informed him thereof, and A. thereupon requested the witness to extend his claim, taking the notes of A. and B. therefor.    To discredit the witness, a letter written by him to A. and B. shortly after that interview was held competent, which contained no reference to the said debt, but showed a sale of goods from the witness to A. and B. and

indicated an expectation on his part that they were to continue business on a considerable scale.

So if upon the same issue B. has testified that he was largely indebted to the witness above referred to, and on cross-examination has denied that he told a third person that his indebtedness to such witness was much less than the amount stated by him in his direct testimony, or requested that person to write to such witness a threatening letter, evidence in reply is competent to contradict B. on these points, for the purpose of discrediting him.

TORT against a deputy sheriff for attaching goods of the plaintiff on a writ against Joseph B. Hamblen.

At the trial in the superior court, before *Russell*, J., to prove title in himself, the plaintiff put in evidence a bill of sale signed by Hamblen, which included these goods, (namely, " all my right, title and interest in and to all the goods, property, chattels and fixtures belonging to the firm of Carruth & Hamblen, which is this day by mutual consent dissolved; also all the goods and property which I own as an individual, and situated in store 199 Broad Street and 135 Purchase Street; also all my or the said firm's interest in all the property situated in Vinal Haven, in the state of Maine, heretofore used by me in my business; also all accounts, bills and debts due and owing said firm, it being understood and agreed that the said Carruth shall assume and pay the liabilities of the said firm,") dated January 22d 1866, for the consideration of $8500; and also a separate paper of the same date, signed by Carruth and Hamblen separately, dissolving their partnership. The plaintiff also introduced evidence tending to show that at and before said date Carruth & Hamblen were in possession of the goods in dispute, as partners in business; and also evidence of the value of the goods and the taking of them by the defendant; and there rested his case.

The defence was that the bill of sale to the plaintiff was in fraud of Hamblen's creditors, and therefore void. The attachment was made on the 6th of March, 1866. On the following day, Hamblen went into insolvency. One of the facts relied upon by the defendant was that the property was claimed to have been put into the firm by Hamblen at the price of $24,000, and the whole was finally sold to the plaintiff for $8500. The defendant called Oliver A. Kelley as a witness; and in cross-

examination he testified that in November 1865 he was a clerk of Hamblen, and by his direction took an account of the stock in Hamblen's store, and never took but one such account of stock for him, and this account of stock being produced was identified by him. This account included many items, amounting in all to $24,000. He also testified to his signature as attesting witness to a paper signed by the plaintiff and Hamblen, the contents of which he was ignorant of. This paper was an agreement of partnership between Carruth and Hamblen, dated December 1, 1865, "for the purpose of carrying on the pickling and preserving business, like or similar to that heretofore done by the said Hamblen." It contained these provisions, among others : " The said Hamblen sells to the said firm his stock of merchandise, as per his bill rendered at this time, the amount of which is to be credited to him in the firm's books as capital paid in by him. The said Carruth is to contribute in cash towards his share of the capital the sum of six thousand dollars, within two months from this time, as needed; and after that, from time to time, as required by the business, an amount to make his capital in the concern equal to that of said Hamblen's." " It is understood and agreed that the said Hamblen shall have the right to withdraw from the funds of the firm, from time to time as needed, to pay his present indebtedness to the extent of not exceeding six thousand dollars."

These papers were both admitted in evidence against the defendant's objection.

For the purpose of showing that the plaintiff knew of Hamblen's indebtedness and had reason to believe him insolvent, before the execution of the bill of sale on January 22, 1866, the defendant called Elijah C. Schanck as a witness, who testified that he was a member of the firm of Schanck & Romain, in New York, who were creditors of Hamblen, and that in January 1866 the plaintiff came to New York, told him he had formed a partnership with Hamblen, and inquired how much Hamblen owed his firm; that he told him the amounts, and the dates when the notes matured, the first of which was January 26 1866; and Carruth wished his firm to extend the time six

months, taking the notes of Carruth & Hamblen for the debt. He also testified that Carruth at this interview talked with him generally about business. Upon cross-examination, Schanck denied that Carruth's visit to New York related wholly to carrying on the business of putting up lobsters at Vinal Haven, in Maine, and that its whole purpose was to endeavor to make some arrangement by which Schanck & Romain should not carry on this business there in opposition to Carruth & Hamblen. The plaintiff was then allowed, against the defendant's objection, to put in evidence the following letter, admitted by Schanck to have been written by himself to Carruth & Hamblen:

" New York, January 18, 1866. Messrs. Carruth & Hamblen, Gents. Inclosed please find Bill and B. L. for ten cases glass peaches as per order. I have been talking over the lobster business with Mr. Romain; he will not agree to have anything to do with two places; says he does not object to pay the rent on Smith's place (that would buy one half of it) for this year until we got to work, but that he does not think any opposition will come after we get started across the way; says we will be calculated to put up 1000 cans daily more than the other factory could do, and that it would only kill ourselves to undertake two places, as it would give outsiders to understand when we saw fit to leave, if it did not pay, (which he says he knows it will not,) that there could be enough fish got to run two places. Think could easily get along with Smith by not being known in the other place at all until commence work, by saying to him you were afraid we would get all the lobsters, but that you would pay him the rent in advance by deducting the interest, and that you would put up what buildings you would want this year, and see how could get along with us; then, if found it would pay, you could have substantial buildings put up. That you could not arrange to get to work very early this spring, and that you could use sheds that would not cost much for this season for a trial, and that they would not cost you much more than the lumber would sell for after you got through in the fall, and that you would not cut the boards, &c., and that

there would not be much loss, and that as he had his rent it would be much better for him. There are many ways you could manage with him, and he would not suspect anything. Then you would have the whole season to take away your things, and leave the place with nothing on, and don't think any one would do anything with the place afterwards. John says he could soon explain it to Mr. Hamblen, why it would not answer, to his satisfaction. Awaiting reply, I remain yours truly, Schanck.

" We would pay you a reasonable price for anything we could use to advantage that you have there, and under this new phase take $2400 ; twenty-four hundred dollars, as that would be the same as proposed if took in the other things, or $2000 and throw the other things into the common stock, and we use what we can, and sell the balance for what we can get for them. S. & R."

For the purpose of showing that Hamblen was indebted to Schanck & Romain in the sum of $6000, promissory notes from him to them for that amount were put in evidence ; and Hamblen (called by the defendant) testified that he owed them that sum. Upon cross-examination, he denied that he had told Clark & Woodward that he owed Schanck & Romain no more than $1500 or $2000 ; that Schanck & Romain had defrauded him ; or that he asked Clark & Woodward to reply for him to a letter from Schanck & Romain, or write a letter to them threatening that, if they showed him up, he would show them up — that he would have a bill too.

The plaintiff then called Clark, of the firm of Clark & Woodward, who testified that Hamblen came to their store and said he had been badly used by Schanck & Romain ; that they claimed he owed them $6000, but that he only owed them $1500 ; that he produced a letter from them, and the witness answered it in the name of Clark & Woodward, read the answer to Hamblen, and believed Hamblen took it. And the witness identified the letter, which was admitted against the defendant's objection, and was as follows :

" Boston, Feb. 9th, 1866. Messrs. Schanck & Romain,

New York, Gentlemen. Mr. Hamblen has just handed us your letter of 1st, and we note your threats, and are surprised that you should take a course of that kind. Sirs, if you have anything that you can show to Mr. Hamblen's disadvantage, you can do so as soon as you please. We believe Mr. H. has been very unjustly dealt with, and his friends are now determined to see him righted, and no threats or any other forcible acts can intimidate us. This threats of yours is in accordance of another party, but it only confirms our views the more we look into the business. Clark & Woodward. P. S. Hamblen may have a pretty good bill against your firm yet for you to settle. C. & W."

The plaintiff, in reply to the defendant's evidence, also introduced evidence tending to show that the stock put into the firm by Hamblen was appraised for the purposes of the partnership by Hamblen and his clerk, and that the plaintiff took no part in the appraisement, and was ignorant of the value of the goods; that the value of the stock as then taken was not intended to be final; that it was taken at an overvaluation; and that in consequence of said overvaluation it was arranged that the values should be changed.

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*B. Dean,* for the plaintiff.

*I. W. Richardson & T. K. Lothrop,* for the defendant.

FOSTER, J. 1. The admission of the partnership agreement as testimony for the plaintiff, after the execution thereof had been proved by cross-examination of the attesting witness, called for other purposes by the defendant, was purely within the discretion of the presiding judge, and not a matter of exception.

2. The account of stock admitted bore the same date with the bill of sale in which it was referred to. The clerk who made it testified that he never took any other account of stock than this one; and that this was taken by Hamblen's direction. There was evidence tending to show that the stock was appraised by Hamblen and his clerk; so that Hamblen was by direct evidence connected with this appraisement or account of stock, and it was identified as the one referred to in the bill of

sale, if not conclusively, at all events sufficiently to be submitted to the jury.

3. The letter from Schanck to Carruth & Hamblen was conceded at the argument to have been written after the interview between him and Carruth in New York. It was admitted to discredit Schanck's account of the conversation between them then, according to his version of which Carruth made inquiries as to the amount due from Hamblen to Schanck & Romain, and asked them to extend the payment of this debt six months, taking for it the notes of Carruth & Hamblen. This conversation was introduced at the trial to show that Carruth knew of Hamblen's indebtedness and liability to pay at maturity, and had reasonable cause to believe that Hamblen was insolvent. The letter, written a very few days after the date of the conversation, contains no reference to the debt due to the writer's firm, or to any proposed extension of payment upon Hamblen's liabilities. On the contrary, it indicates an expectation that Carruth & Hamblen were to continue in business on a considerable scale. It likewise showed that the writer was after the conversation continuing to deal with and sell goods to Carruth & Hamblen. And it was a fair topic of argument that the tenor of the letter was inconsistent with any belief on the part of the writer that the parties to whom it was addressed were in circumstances of pecuniary embarrassment. It thus bore upon the question whether Schanck's narrative of the conversation was correct and accurate ; and whether what passed between him and Carruth on that occasion required the construction put upon it by the witness and the party on behalf of whom he testified. When a conversation is introduced in evidence from which a particular inference is sought to be drawn, that inference may be rebutted by showing that the witness to whom it was addressed did not at the time put upon it the interpretation which he or the party calling him claims as its true construction, and that he did not then deduce from it the conclusion which at the trial it is used to establish. The bearing of the letter in this direction may nave been very slight, but it was legitimate for the consideration of the jury in reply to the testimony of Schanck.

4. The second letter objected to was admissible to discredit the testimony of Hamblen. It was an answer made by Mr. Clark at Hamblen's request to a letter from Schanck & Romain to him. He read the letter and took it away with him. Hamblen had testified that he owed Schanck & Romain $6000. The letter tended to show that he then denied so large an indebtedness, and complained of their conduct in presenting such a claim as an act of injustice which he and his friends were prepared to resist. It is to be taken in connection with and as confirmatory of Clark's narrative of the conversation he held with Hamblen at the time it was written. Indeed, the letter may under the circumstances be regarded as a part of that conversation. If the threats and injustice referred to in it did not relate to the claim of $6000, the meaning of the letter was open to explanation by Hamblen himself, or any other competent testimony. In the absence of any such explanation, the letter and conversation tended to show that Hamblen then indignantly denied the very debt to the existence of which he had testified before the jury. *Exceptions overruled.*